BANK OF HAWAII, Plaintiff

v.

CONGREGATIONAL CHRISTIAN CHURCH OF TUTUILA,
CONGREGATIONAL CHRISTIAN CHURCH OF TUTUILA AND
MANU'A, CONGREGATIONAL CHRISTIAN CHURCH IN AMERICAN
SAMOA, CONGREGATIONAL CHRISTIAN CHURCH IN SAMOA,
CONGREGATIONAL CHRISTIAN CHURCH AUTAUMAFAI,
CONGREGATIONAL CHRISTIAN CHURCH IN FALEFANO,
THE BOOK STORE, FAAGAU TULAFONO, GALEA'I POUMELE,
REV. FITI A. SUNIA, REV. PANAMA, REV. PANAPA,
REV. TIMA TIMA, REV AASI, LE'IATO T., REV. ENOKA,
and DOES I-X, Defendants

High Court of American Samoa
Trial Division

CA No. 32-80

December 12, 1988

Before REES, Associate Justice.

Counsel: For Plaintiff, Roy J.D. Hall, Jr.
        For Defendant  Congregational Christian
           Church in American Samoa, John Ward
        For Defendant Congregational Christian
           Church in Samoa, Aviata Fa'alevao

On Order to Show Cause, Motion to Dismiss or in the Alternative for Joint Liability, and Motion for Relief From Judgment:

## I.   Facts and Procedural History

In 1980 the Bank of Hawaii filed this action in interpleader.  As a result of a disagreement between the two principal parties, Congregational Christian Church in Samoa (CCCS) and Congregational Christian Church in American Samoa (CCCAS), the

101

Bank claimed that it did not know the true owner of certain funds it held on deposit.

The Bank deposited certain funds with the Court and sought an order compelling the defendants to interplead and discharging the Bank from further liability. On June 16, 1980, the Court ordered that certain other funds in the amount of $29,607, held by the Bank of Hawaii at its Waikiki branch "be held as part of the money entity." On June 26 this order was put in writing. The funds in Waikiki were ordered "to be included in the sums of moneys herein litigated between the Church in American Samoa and the Church in Western Samoa. The said amount of $29,607.09 plus any interest earned therefrom shall not be dispursed [sic] by anyone in any manner or form unless ordered by the Court."

At the June 16 hearing the Court also granted a motion to dismiss Rev. Faagau Tulafono, then the assistant treasurer of CCCS and the named holder of the Waikiki bank account, as a defendant in his individual capacity, since he "disclaims and has no personal interests" in any of the funds.

On June 27, 1980, the Court signed an order discharging the Bank of Hawaii from further liability. The Court noted that it retained jurisdiction for the purpose of determining the rights of the respective defendants "in and to the funds on deposit in the registry of this Court."

Four years later, on June 27, 1984, counsel for CCCAS moved that the Court order Rev. Tulafono and CCCS to withdraw the $29,607 on deposit in Waikiki, plus accumulated interest, and to deposit the money in the registry of the Court. On July 9 the motion was denied. Although a transcript of that hearing is unavailable, the notes of counsel for CCCS reflect that the motion was denied on the ground that the money would earn a higher rate of interest in Waikiki than in American Samoa. No other party disputes this.

On November 27, 1987, CCCS and CCCAS agreed to a stipulated judgment. The stipulation provided in pertinent part that "[a]ll funds remaining with the Court registry in this matter, to wit, $19,579.72 and the $29,607.90 deposited with the Waikiki Branch of the Bank of Hawaii . . . by Elder Rev. Tulafono Fa'agau plus interest accumulated since

deposit shall be paid over to the CCCAS." On November 30 the Court signed this judgment.

Shortly thereafter CCCAS presented the Bank of Hawaii with a copy of the judgment and requested the $29,607 plus interest. The Bank responded that the money was not in the Bank and had not been there for some time. The Court later learned that Rev. Tulafono had moved the money from the Waikiki Branch to the American Samoa branch of the Bank of Hawaii, and had subsequently withdrawn and spent it. No party disputes Rev. Tulafono's contention that he spent the money for church (CCCS) purposes.

## II. The Order to Show Cause

Counsel for CCCAS then moved for an order to show cause why the Bank of Hawaii should not be held in contempt of the Court's orders of June 27, 1980, and November 27, 1987. The first of these orders provided that the funds in Waikiki were to be included in the funds litigated and were not to be disbursed by anyone. The second order provided that the funds should be disbursed to CCCAS in accordance with the stipulated judgment.

## III. The Bank's Motion "to Dismiss or for Joint Liability"

The Bank has moved to dismiss the order to show cause on several grounds. The Bank's primary contention is that the Court's June 26, 1980, order was a clumsily drafted attempt to order the Waikiki money deposited in the registry of the Court. This contention is contrary to the clear language of the order and to the most obvious inference from the circumstances surrounding it. It is clear that the Court wished the Waikiki money to be "included" in the interpleaded funds only in the sense that it was to be left right where it was pending the ultimate outcome of the case. Indeed, in 1984 the Court denied a motion by CCCAS to deposit the funds in the registry of the Court. The denial of such an order makes no sense if it was, as counsel for the Bank now contends, exactly what the Court had already ordered back in 1980. The Court minutes reflect that counsel for the Bank, as well as for CCCAS and CCCS, were present at the 1984 hearing. It is obvious that all counsel agreed with the obvious premise of the CCCAS motion: that the money was still safely in the Waikiki branch of the Bank of Hawaii.

The Bank also maintains that the Court's 1987 judgment implicitly incorporated a July 1987 stipulation between the CCCS and the CCCAS according to which CCCAS would receive "the funds in the Bank of Hawaii" as of that date. Since the Waikiki funds had already been withdrawn by then, the Bank argues that CCCAS lost any right to them when it agreed to this stipulation. This argument ignores the fact that CCCAS had a right to rely on compliance by all parties with the Court's 1980 order that the Waikiki funds not be disbursed.

The record reflects that these funds were a continuing source of interest and concern to CCCAS from 1980 through 1987. It is unrealistic to assume that CCCAS meant to waive its claim to these funds merely because it agreed to accept "the funds in the Bank of Hawaii" instead of "the funds that are in the Bank of Hawaii assuming the Bank has not wrongfully disbursed them." Moreover, the November 1987 stipulated agreement on which the judgment is explicitly based does specifically refer to the $29,607 that had been on deposit in Waikiki.

Finally, although the Bank does not raise this as a ground for its motion, we note that the Bank's discharge from further liability in connection with the interpleaded funds (signed by the Court on June 27, 1980) was obviously not intended to discharge the Bank from continuing compliance with the order the Court had signed the day before (June 26) prohibiting the disbursal of the Waikiki funds until further notice.

In the alternative the Bank argues that it is jointly liable with CCCS, and should be indemnified by CCCS for any money it is required to pay to CCCAS. This seems obviously correct. The Court order prohibiting the Bank from disbursing the funds also prohibited CCCS or Rev. Tulafono from withdrawing them. It is undisputed that the funds were received by Rev. Tulafono and used for CCCS expenses. Both parties who violated the order thereby obligated themselves to compensate the party for whose protection the order was made--- that is, the party ultimately held entitled to the funds. As between the two parties who violated the order, the party who received and spent the money must indemnify the party who merely released it.

104

## IV.   The CCCS Motion for Relief from Judgment

CCCS has moved for relief from the judgment awarding the Waikiki funds to CCCAS, on the ground that when the parties stipulated to this judgment they did so under a mutual mistake. But there was no mutual mistake. It is true that CCCAS and some representatives of CCCS seem to have assumed that Rev. Tulafono had not violated the Court's order. Rev. Tulafono was an officer of CCCS, its chief agent in connection with the safekeeping and disposition of the Waikiki funds, and a participant in the negotiations leading up to the stipulation. An institutional party is chargeable with the knowledge (and responsible for the actions) of the agents who conduct the transactions that become the subject of litigation. See Development Bank v. Ilalio, 5 A.S.R.2d 110, 124 (1987). CCCAS is the only party who can claim the benefit of a mistake with regard to facts within the sole knowledge of CCCS and its officers, and CCCAS does not wish to disturb the judgment.

CCCS also argues that it agreed to the November 1987 stipulation under a unilateral mistake, not understanding that the stipulation would entitle CCCAS to the Waikiki funds. The only evidence for this is (1) an affidavit from Rev. Tulafono, saying that he had always regarded the Waikiki funds (contrary to the clear language of the 1980 order) as outside the scope of this litigation; and (2) an affidavit from the current General Secretary of CCCS stating that "my predecessor reviewed [the November 1987 stipulation] together with members of the Committee that agreement and approved its execution by then counsel Aitofele Sunia," but that "my predecessor was not fully aware of all previous agreements between CCCS and CCCAS when the stipulated agreement was approved."

CCCS submits neither an affidavit from the General Secretary who actually conducted the negotiations, and whose awareness CCCS wishes to put at issue, nor an explanation of why it is unable to present such an affidavit. Counsel for CCCAS, on the other hand, submits an affidavit that he specifically apprised the then General Secretary that the Waikiki funds were subject to the stipulation. Moreover, the language of the stipulation itself clearly and prominently refers to the Waikiki money.

105

If the wrongful removal of the funds had been discovered prior to the entry of judgment and CCCAS had moved to require CCCS to replace them, it would have been difficult to construct an argument for the denial of the motion. The position of CCCS at present, after agreeing to a stipulated judgment with the advice of counsel, would appear to be weaker rather than stronger than before. Relief from a judgment is an equitable remedy, and it would be grossly inequitable to allow CCCS such relief (to the corresponding detriment of an innocent opposing party) on the sole ground of its own violation of an unequivocal court order.

## Conclusion

The Court finds the failure of the Bank of Hawaii to comply with the Court's orders owing to confusion rather than wilfulness, and therefore declines to find the Bank in contempt. The Bank is, however, obliged by the Court's 1980 and 1987 orders to surrender to CCCAS an amount equal to $29,607.90 plus the interest that would have accrued on a certificate of the type in which the funds were held, and further denial of this obligation would constitute contempt.

The primary obligor, however, is CCCS, which received the benefit of the funds in question. CCCS and the Bank are jointly and severally liable to CCCAS, and CCCS must indemnify the Bank for any amounts it is required to pay CCCAS.

CCCS has not raised the issue of its rights, if any, against Rev. Tulafono, and we express no opinion on this question.

The order to show cause is dismissed. The motion for relief from judgment is denied.

It is so ordered.